UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
FERNANDO ADALBERTO GALEAS
MIRANDA,

                    Petitioner,

         - against -

RAUL MALDONADO, JR., in his official
capacity as Warden of the Metropolitan
Detention Center, *et al.*,

                  Respondents.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-6882 (PKC)

PAMELA K. CHEN, United States District Judge:

Petitioner Fernando Adalberto Galeas Miranda filed a petition for a writ of habeas corpus challenging Respondents' decision to detain him without an individualized bond hearing. The Court granted his petition, ordering his release from unlawful detention. Petitioner has moved for attorneys' fees under the Equal Access to Justice Act ("EAJA"). For the reasons discussed below, Petitioner's motion for attorneys' fees is granted in part and denied in part, and Petitioner is awarded $21,757.36 in attorneys' fees pursuant to the EAJA.

## BACKGROUND

Petitioner Galeas Miranda is an Ecuadorian national who has been living in the United States since December 2022. (*See* Pet., Dkt. 1, ¶ 23.) On June 23, 2025, while Petitioner was making an appearance in immigration court, Immigration and Customs Enforcement ("ICE") arrested him and eventually transferred him to the Metropolitan Detention Center where he remained for nearly six months until the Court ultimately ordered his release. (*See id.* ¶¶ 37–43; 12/22/2025 Dkt. Order (ordering release).) On December 15, 2025, Petitioner brought this action seeking a writ of habeas corpus in which he claimed that his detention was unlawful and that he

was thus entitled to release.  (Pet., Dkt. 1, ¶¶ 2, 4.)  Later that day, the Court ordered Respondents to show cause why Petitioner's request for a writ of habeas corpus should not be granted.  (*See* O.S.C., Dkt. 5.)   On December 20, 2025, Respondents filed a response in which they acknowledged that the "Court ha[d] already resolved similar claims in *R.A.R.R. v. Almodovar*," *see* Order, *R.A.R.R. v. Almodovar*, No. 25-CV-6597 (PKC) (E.D.N.Y. Dec. 19, 2025), and that "[w]hile [Respondents] respectfully disagree[d] with the Court's ruling in *R.A.R.R.*, [they] acknowledge[d] that the decision would control the result in this case if the Court adhere[d] to that ruling."  (Resp'ts' O.S.C. Resp. ("O.S.C. Resp."), Dkt. 10, at 4.)  The next day, Petitioner filed a reply letter in further support of his Petition.  (*See* Reply Supp. Pet., Dkt. 11.)

On December 22, 2025, the Court granted the Petition and ordered Petitioner's release. (12/22/2025 Dkt. Order.)  The Court subsequently issued a Memorandum & Order supplying the reasons for its granting the Petition.  (Mem. & Order, Dkt. 17.)  In short, "adher[ing] to its reasoning in *R.A.R.R.*, as well as the reasoning of the vast majority of other district courts to consider similar cases," (*id.* at 3 (collecting cases)), the Court held that "Petitioner was detained pursuant to 8 U.S.C. § 1226(a)," ("Section 1226(a)")—not 8 U.S.C. § 1225(b)(2)(A) ("Section 1225(b)(2)(A)")—"and that his detention without any individualized custody determination violated his right to due process under the Fifth Amendment of the Constitution," (*id.*).

On January 26, 2026, Petitioner moved for $23,265.14 in attorneys' fees pursuant to the EAJA, 28 U.S.C. § 2412.  (Mot. Fees ("Fees Mot."), Dkt. 19-1, at 1.)  On March 16, 2026, Respondents filed an opposition to Petitioner's Motion, (Opp'n Mot. EAJA Fees ("Fees Opp'n"), Dkt. 22), and on March 30, 2026, Petitioner filed a reply in further support of his Motion, (Reply Supp. Mot. Fees ("Fees Reply"), Dkt. 24).

**LEGAL STANDARD**

The EAJA empowers federal courts to "award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Second Circuit has established that "a habeas proceeding challenging immigration detentions constitutes a 'civil action' under the EAJA." *Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005).

To award EAJA fees, the Court must conclude:

> (1) that the claimant [is] a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990). Furthermore, the attorneys' fees must be "reasonable." *See* 28 U.S.C. § 2412(d)(2)(A) (defining "fees and other expenses" to include "reasonable attorney fees" below "$125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee").

Where a petitioner "demonstrate[s] that [he] is a prevailing party under the EAJA, the burden shifts to the government to demonstrate that its litigation position was 'substantially justified.'" *Commodity Futures Trading Comm'n v. Dunn*, 169 F.3d 785, 786 (2d Cir. 1999) (per curiam).[1] The government's position is substantially justified if it "had a reasonable basis in both

---

[1] The prevailing party is the one to whom "the court grants relief . . . based on 'an assessment of the merits' and thus 'unquestionably' and 'materially alter[s] the existing legal relationship between the parties.'" *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 505–06 (S.D.N.Y. 2025) (alteration in original) (quoting *Vacchio*, 404 F.3d at 674).

law and fact." *Vacchio*, 404 F.3d at 674 (quoting *Sotelo-Aquije v. Slattery*, 62 F.3d 54, 57 (2d Cir. 1995)); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (concluding that "substantially justified" means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person," which is "no different from the 'reasonable basis both in law and fact' formulation"). When evaluating whether the government's actions were "substantially justified," courts consider the government's pre-litigation conduct, as well as its litigation positions, because "under the EAJA 'only one threshold determination for the entire civil action is to be made.'" *Senville v. Madison*, 331 F. App'x 848, 850 (2d Cir. 2009) (summary order) (quoting *Jean*, 496 U.S. at 159); *see also* 28 U.S.C. § 2412(d)(2)(D) (defining "position of the United States" to mean, "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based").

## DISCUSSION

Respondents do not dispute that Petitioner is a "prevailing party," or that Petitioner's motion for fees is timely. Instead, Respondents oppose Petitioner's fee request on only two grounds: (1) "Respondents' legal position was substantially justified," and (2) if the Court awards fees, "the fee amount should be significantly reduced because Petitioner's request does not reflect a reasonable expenditure of hours." (Fees Opp'n, Dkt. 22, at 4.)

## I.    Respondents' Position Was Not "Substantially Justified"

Respondents have failed to carry their burden of demonstrating that their pre-litigation actions and litigation positions were "substantially justified." Respondents argue that "[g]iven the existence of numerous, well-reasoned decisions from federal courts at the district and appellate levels agreeing with Respondents' position, and the absence of controlling authority foreclosing that position, Respondents' arguments were substantially justified." (*Id.* at 9.) In support, Respondents cite decisions by the Fifth Circuit and Eighth Circuit Courts of Appeals, nine

4

decisions by six judges in this Circuit, and various decisions by district courts outside this Circuit that concluded Respondents' position was legally correct.  (*See id.* at 7–8 & n.1 (collecting cases); Resp'ts' Letter Suppl. Authority, Dkt. 25 (citing *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), as supplemental authority)).

Respondents' reliance on the case law they have collected is misplaced because these decisions mostly post-date the relevant events in this matter.  As Respondents acknowledge, "[t]he issue for EAJA purposes is . . . whether the government was substantially justified in believing the law not to have foreclosed its position *during the underlying litigation*."  *Dunn*, 169 F.3d at 786 (emphasis added); (*see* Fees Opp'n, Dkt. 22, at 7 (quoting the same language)).

Respondents unlawfully detained Petitioner on June 23, 2025, (*see* Pet., Dkt. 1, ¶ 39), pursuant to Section 1225(b)(2)(A), (*see* O.S.C. Resp., Dkt. 10, at 2).  The decisions Respondents cite from district courts across the country and the Fifth Circuit and Eighth Circuit Courts of Appeals approving of their legal position *all* came after Respondents purportedly relied on Section 1225(b)(2)(A) to detain Petitioner.  (*Compare* Fees Opp'n, Dkt. 22, at 7–8 (citing cases dated on or after September 4, 2025) *with* O.S.C. Resp., Dkt. 10, at 2 (stating Petitioner was detained on June 23, 2025)).  Respondents have not pointed to a single decision from any court anywhere in the country that had held Respondents' litigation position was legally correct *before* Respondents detained Petitioner.[2]  Therefore, none of the decisions that Respondents rely on have any bearing on whether Respondents were "substantially justified" at the time they detained Petitioner purportedly pursuant to their authority under Section 1225(b)(2)(A).  Furthermore, to

---

[2] Even when considering the dozens of out-of-circuit district court decisions that Respondents cite, none approved of Respondents' position before Respondents relied on this theory to detain Petitioner. (*See* Fees Opp'n, Dkt. 22, at 8–9 n.1 (collecting cases dated September 24, 2025 and later).)

the extent the Court should consider decisions that post-date Respondents' actions in determining whether Respondents' litigation position was "substantially justified," the Second Circuit Court of Appeals has since squarely held that Respondents' position was legally incorrect. *See Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026). So, any post-hoc survey of court decisions only adds further weight against a finding that Respondents' position was "substantially justified."

Neither do Respondents case citations support the proposition that their litigation position was "substantially justified" when taken in response to the Court's Order to Show Cause. Of the cases Respondents cite, six of the nine district court decisions from this Circuit and the two courts of appeals decisions came after December 20, 2025, the day Respondents asserted their litigation position in this action. (*See* O.S.C. Resp., Dkt. 10, at 2). Respondents' citations to three district court decisions from two judges in this Circuit that approved of Respondents' statutory interpretation position before Respondents asserted it in this action do not establish that Respondents' position was "substantially justified" because those decisions did not represent the majority, or even a substantial minority, view in this Circuit. (*See* Fees Opp'n, Dkt. 22, at 7–8 (citing *Liang v. Almodovar*, No. 25-CV-9322 (MKV), 2025 WL 3641512, at *3–5 (S.D.N.Y. Dec. 15, 2025) (Vyskocil, J.); *Xiaoquan Chen v. Almodovar*, 815 F. Supp. 3d 314, 319–24 (S.D.N.Y. 2025) (Vyskocil, J.) (issued Dec. 4, 2025); *Candido v. Bondi*, No. 25-CV-0867 (JLS), 2025 WL 3484932, at *3 (W.D.N.Y. Dec. 4, 2025) (Sinatra, J.)).)

Nor were those three decisions from two judges the first in this Circuit to address the issue. As early as August 13, 2025, a court in the Southern District of New York held that Respondents' litigation position was legally incorrect, *see Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 491 (S.D.N.Y. 2025) (Ho, J.), and a court in this District held the same on September 29, 2025, *see J.U. v. Maldonado*, 805 F. Supp. 3d 482, 494 (E.D.N.Y. 2025) (Merchant, J.). After *J.U.*, and

6

before Respondents filed their response papers here, at least ten more decisions in this District came to the same conclusion that Respondents' position was legally incorrect.[3]  Furthermore, as Respondents acknowledged in espousing their litigation position, *this* Court had already found the same, and Respondents' only argument for continued detention of Petitioner was that they "respectfully disagree[d] with th[is] Court's ruling" in that case.  (O.S.C. Resp., Dkt. 10 at 4 (citing Order, *R.A.R.R. v. Almodovar*, No. 25-CV-6597 (PKC) (E.D.N.Y. Dec. 19, 2025).)  This consistent and substantial record of courts in this District rejecting Respondents' position, with only scant support elsewhere in the Circuit, weighs strongly against finding that Respondents' litigation position was "substantially justified" at the time they advanced it in this case.  *See Pierce*, 487 U.S. at 569 (recognizing that "a string of losses can be indicative" of a litigation position not being "substantially justified").

Even assuming, *arguendo*, that Respondents' litigation position was "substantially justified" when they responded to the Court's Order to Show Cause on December 20, 2025, Respondents point to no authority to suggest it was "substantially justified" at the time they detained Petitioner pursuant to Section 1225(b)(2)(A) on June 23, 2025.  *See Gomez-Beleno v.*

---

[3] *See Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 WL 2829434, at *4–8 (E.D.N.Y. Oct. 5, 2025) (Merchant, J.); *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 484–90 (E.D.N.Y. 2025) (Morrison, J.) (issued Oct. 6, 2025); *Sarmiento Guerrero v. Noem*, 815 F. Supp. 3d 181, 185–89 (E.D.N.Y. 2025) (Komitee, J.) (issued Nov. 18, 2025; addressing issue in context of preliminary injunction factors); *Montoya v. Bondi*, No. 25-CV-6363 (JMA), 2025 WL 3280762, at *1 (E.D.N.Y. Nov. 25, 2025) (Azrack, J.) (addressing issue in context of preliminary injunction factors); *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 400–02 (E.D.N.Y. 2025) (Gonzalez, J.) (issued Nov. 25, 2025); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 308–12 (E.D.N.Y. 2025) (Choudhury, J.) (issued Nov. 28, 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026); *Ye v. Maldonado*, No. 25-CV-6417 (AMD), 2025 WL 3521298, at *3–6 (E.D.N.Y. Dec. 8, 2025) (Donnelly, J.); *Molina v. Deleon*, No. 25-CV-6526 (JMA), 2025 WL 3525857, at *1 (E.D.N.Y. Dec. 9, 2025) (Azrack, J.) (addressing issue in context of preliminary injunction factors); *Y- C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *3–5 (E.D.N.Y. Dec. 17, 2025) (Merle, J.).

*Holder*, 644 F.3d 139, 145 (2d Cir. 2011) (assessing whether the "position of the United States" was "substantially justified" by looking at both the government's litigation position and the government's pre-litigation conduct at the agency level). As discussed above, Respondents do not cite a single decision supporting their position before Respondents detained Petitioner on June 23, 2025, and the Court is aware of none.[4] Instead, Respondents suggest that it was "substantially justified" because of "the absence of controlling authority foreclosing that position" when Petitioner was detained in June 2025. (Fees Opp'n, Dkt. 22, at 9.) The Court finds this argument disingenuous. There was no "controlling authority foreclosing that position," (*id.*), because "[f]or *decades*, 'DHS's longstanding interpretation' ha[d] been that [Section] 1226[(a)], and not [Section] 1225[(b)(2)(A)], 'applies to aliens who have crossed the border between ports of entry and are shortly thereafter apprehended,'" *Savane v. Francis*, 801 F. Supp. 3d 483, 489 (S.D.N.Y. 2025) (emphasis added) (first quoting Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954); and then citing 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (Department of Justice announcing new regulations and stating that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination.")). The government cannot "revisit[] [its] legal position"[5] for

---

[4] *See Barco Mercado*, 811 F. Supp. at 506 (Appendix B cataloguing 362 decisions from around the country as of November 2025 in which Respondents' position had been rejected 350 times, and showing that the earliest acceptance of Respondents' position came on August 5, 2025 (citing *Pipa-Aquise v. Bondi*, No. 25-CV-1094 (MSN) (WBP), 2025 WL 2490657 (E.D. Va. Aug. 5, 2025))).

[5] *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited July 8, 2026) (ICE memorandum from July 8, 2025 disseminating "Interim Guidance" to "All ICE Employees," including that DHS "has revisited its legal position on detention and release authorities" insofar as "DHS has determined that [8 U.S.C. § 1225], rather than [8 U.S.C. § 1226],

policy reasons without due care for its soundness as a matter of law, point to a lack of controlling authority foreclosing it due to its novelty, and then claim its position was "substantially justified" because no authorities had *yet* found it *unjustified*.[6]  Finding that the government's actions under such circumstances were "substantially justified" would undermine "the EAJA's fundamental objective to encourage individuals to challenge governmental policies that are not 'substantially justified.'"  *Healey v. Leavitt*, 485 F.3d 63, 68 (2d Cir. 2007) (citing H.R. Rep. No. 96-1418, at 9 (Sep. 26, 1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4988).

Finally, in addition to not being "substantially justified" as a legal matter, the Court notes that, in this case, Respondents' litigation position does not appear to have been "substantially justified" as a factual matter.  *See Vacchio*, 404 F.3d at 674 (noting that the government's position is substantially justified only if it "had a reasonable basis in both law *and fact*" (emphasis added)). Here, despite ICE's contemporaneous documentation of the basis for Petitioner's detention stating that it was detaining him pursuant to Section 1226(a), (*see* Pet. Ex. E, Dkt. 1-5 (June 23, 2025 Notice of Custody Determination form noting Petitioner was detained pursuant to "section 236 of the Immigration and Nationality Act," which is statutorily codified as Section 1226(a)); Dkt. 10-5 (same)), Respondents' litigation position was that Petitioner was detained pursuant to Section 1225(b)(2)(A), (*see* O.S.C. Resp., Dkt. 10, at 2).  Yet, Respondents never addressed this

---

is the applicable immigration detention authority for all applications for admission," defined to include "an alien present in the United States who has not been admitted").

[6] *See Barbosa da Cunha*, 175 F.4th at 96 (concluding that "the government's attempt to muddy these textually clear waters" by pursuing the same litigation position as here "defies the statute's context, structure, history, and purpose"); *id.* at 93 (reiterating that even if the Second Circuit were incorrect that "the unambiguous language of the statute unquestionably favors Petitioner's interpretation," the Circuit would still consider decades of consistent Executive Branch practice that contradicts the government's current position, as "it is hard to fathom how the plain text could be read to somehow unambiguously favor the government").

inconsistency between the evidence and their representations to the Court.  While this fact does not on its own defeat Respondents' claim that their position was "substantially justified," it is yet another factor weighing against such a finding.

In sum, Respondents have failed to carry their burden of demonstrating that their position—that Petitioner, a non-U.S. citizen who had never been admitted to, but has been physically present in, the United States was subject to mandatory detention under Section 1225(b)(2)(A)—was "substantially justified."  Accordingly, the Court finds that Petitioner is entitled to attorneys' fees under the EAJA.

## II.     Reasonable Fees

Having concluded that Petitioner is entitled to attorneys' fees, the Court next addresses whether the amount of EAJA fees Petitioner has requested is reasonable.  *See Merlo Puerto v. Leeper*, --- F. Supp. 3d ----, No. 26-CV-0405 (NRM), 2026 WL 1600665, at *6–7 (E.D.N.Y. June 4, 2026) (assessing reasonableness of EAJA fees requested after court granted habeas petition for immigration detainee); *L.R.C. v. Maldonado*, No. 25-CV-6825 (AMD), 2026 WL 946787, at *3–5 (E.D.N.Y. Apr. 7, 2026) (same).  Petitioner seeks $23,265.14 in attorneys' fees for 82.8 hours of work at a rate of $280.98 per hour, an hourly rate calculated using Consumer Price Index values to make cost-of-living adjustments.  (Fees Mot., Dkt. 19-1, at 7.)  As a threshold matter, the Court notes that this request should properly be for $21,757.36—82.8 hours of work at a rate of $262.77 per hour—when using the correct Consumer Price Index for urban consumers ("CPI-U") values to calculate the hourly rate.[7]

---

[7] Courts determine the cost-of-living adjustment by dividing the current CPI-U by the CPI-U in the month that the cap was imposed (which is March 1996), and then multiplying the product by the basic EAJA rate ($125).  *See Safranek v. Wormuth*, No. 23-CV-5985 (JCM), 2024 WL 5186599, at *3 (S.D.N.Y. Dec. 19, 2024).

The primary dispute as to the reasonableness of Petitioner's fee request is whether the number of hours (82.8) is reasonable. Respondents contend that Petitioner's use of four attorneys was too many, (*see* Fees Opp'n, Dkt. 22, at 11), and that Petitioner's attorneys spent too much time on various tasks, (*see id.* at 12). For example, Respondents take issue with how Petitioner's attorneys "spent more than 50 hours preparing the Petition and a related motion, even though, as counsel acknowledged in that same Petition and subsequent filings, the principal legal issues had already been extensively litigated in this district and elsewhere." (*Id.*) Respondents argue that "[t]his prior litigation provided a clear roadmap for Petitioner's arguments such that extensive research, analysis, and original drafting were not required." (*Id.*) As another example, Respondents point to how "four different attorneys billed time to prepare for the hearing (more than 20 hours)." (*Id.*) Ultimately, Respondents argue that "the number of hours [should] be

---

The parties dispute the correct value for the March 1996 CPI-U index for New York-Newark-Jersey City, a value critical to calculating the hourly rate. Petitioner uses 155.7, (*see* Fees Mot., Dkt. 19-1, at 7; Fees Reply, Dkt. 24, at 6 n.3), while Respondents use 166.5, (*see* Fees Opp'n, Dkt. 22, at 13 n.4). Petitioner relies on inactive internet links and a few court decisions from outside this District (apparently wrongly) noting a value of "155.7," (*see* Fees Mot., Dkt. 19-1, at 7; Fees Reply, Dkt. 24, at 6 n.3), whereas Respondents cite a primary source indicating the correct value is 166.5, (*see* Fees Opp'n, Dkt. 22, at 13 n.4 (citing U.S. Bureau of Labor Statistics, CPI-U Databases, Tables & Calculators by Subject, https://www.bls.gov/cpi/regional-resources.htm (last accessed June 23, 2026))). It appears Petitioner might be relying on the March 1996 CPI-U for the U.S. city average, which is 155.7, but not appropriate for the present purposes. Given the primary source indicating 166.5, and in accordance with the value this and other courts in this District have used, *see, e.g.*, *Saposnick v. Kijakazi*, No. 23-CV-3600 (PKC), 2025 WL 373463, at *3 (E.D.N.Y. Feb. 3, 2025); *L.R.C*, 2026 WL 946787, at *5, the Court finds that 166.5 is the appropriate index value. The Court then calculates an hourly rate of $262.77 by using the same formula as Petitioner (which Respondents do not dispute): dividing 350.003 (Dec. 2025 CPI-U for NY-NJ-PA) by 166.5 (Mar. 1996 CPI-U for NY-NJ-PA) and multiplying that value (2.102) by $125 (the statutory rate cap when not accounting for cost-of-living adjustments)—equaling $262.77.

11

reduced by at least 75%, to bring any fee award closer in line to the fee amounts" in other habeas petition cases brought by immigration detainees. (*Id.* at 12–13.)[8]

Respondents' contentions are without merit. "[I]t is not unreasonable *per se* for more than one lawyer to work on a task." *U.S. ex rel. ATC Distribution Grp., Inc. v. Ready-Built Transmissions, Inc.*, No. 03-CV-2150 (GWG), 2007 WL 2522638, at *5 (S.D.N.Y. Sep. 7, 2007) (collecting cases). Courts have "ample discretion" to assess "the extent of staffing" appropriate for a given case. *See N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (in context of attorney's fees under 42 U.S.C. § 1988). Here, the Court finds nothing unreasonable about four attorneys conducting work on Petitioner's case. "Indeed, the use of [multiple] attorneys may actually have increased the efficiency of the litigation." *ATC Distribution Grp.*, 2007 WL 2522638, at *5 (quoting *Pro-Choice Network v. Project Rescue*, 848 F. Supp. 400, 405 (W.D.N.Y. 1994)).

Additionally, Respondents' suggestion that Petitioner's counsel could have handled this case exactly like many others in this District, (*see* Fees Opp'n, Dkt. 22, at 12 (arguing that "prior litigation provided a clear roadmap for Petitioner's arguments such that extensive research, analysis, and original drafting were not required")), cannot be squared with Respondents' suggestion that there was substantial uncertainty as to the legality of Petitioner's detention. In any event, even if many courts had already found that Respondents' detention policies were

---

[8] The cases Respondents cite for a lower EAJA fee award—*Ye v. Maldonado*, No. 25-CV-6417 (AMD), and *Ram v. Maldonado*, No. 26-CV-0266 (AMD), (*see* Fees Opp'n, Dkt. 22, at 13)—were stipulated fee amounts, (*see id.* at 4 (acknowledging that the fees awarded in *Ye* and *Ram* were "so-ordered stipulation[s]")). Respondents also cite cases from many years ago in other districts dealing with entirely inapposite issues. (*See id.* at 13 (first citing *Degreenia-Harris v. Life Ins. Co. of N. Am.*, No. 19-CV-0218 (CR), 2021 WL 5979683, at *12 (D. Vt. Dec. 17, 2021); and then citing *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *14 (S.D.N.Y. May 14, 2012)).) These authorities are irrelevant to the present analysis.

unauthorized, counsel for Petitioner still needed to act expeditiously and thoroughly to ensure the greatest potential that Petitioner would be released from his unlawful detention as soon as possible. In doing so, counsel for Petitioner provided exceptionally thorough submissions that laid out detailed factual allegations, (*see* Pet., Dkt. 1, ¶¶ 23–60), and succinctly applied law to fact, (*see id.* ¶¶ 85–97).  Simply borrowing the "roadmap" from other cases without substantial attention to the particulars of Petitioner's case would have been an irresponsible approach for counsel to take where Petitioner's liberty interests were at stake.

Based on an independent analysis of Petitioner's attorneys' time entries, (Fees Mot. Ex. B, Dkt. 19-3), the Court finds that the number of hours billed by Petitioner's attorneys was reasonable.  Although, as noted, Respondents express concern over "four different attorneys bill[ing] [over 20 hours] to prepare for the hearing," (Fees Opp'n, Dkt. 22, at 12), review of the attorneys' time entries reveals that of the 19.5 hours spent preparing for the hearing, 15.5 were by one attorney.  (*See* Fees Mot. Ex. B, Dkt. 19-3, at 1–2 (entries 12/16/25 through 12/22/25 related to argument/hearing preparation).)  That the three other attorneys spent an average of 1.33 hours each to assist the attorney primarily responsible for presenting oral arguments is perfectly reasonable.  Indeed, the Court recognizes the importance of an attorney preparing for a hearing before it so as to ensure the efficient use of its judicial resources.[9]  Elsewhere in the time entries, four attorneys devoted a combined three hours to what was ultimately a thorough reply letter on a one-day turnaround, (*see id.* (entries 12/20/25 through 12/21/25 related to "reply")), which

---

[9] At a certain point, the number of hours spent preparing for argument could be excessive, but this is not that case.  *See, e.g.*, *R.F.M. v. Nielsen*, No. 18-CV-5068 (LLS) (OTW), 2020 WL 6393583, at *7 (S.D.N.Y. May 4, 2020) (finding a 10% reduction in fees warranted where a team of attorneys spent 501 hours preparing for an oral argument and seven attorneys billed time for one court appearance where only two of them appeared on the record), *report and recommendation adopted*, 2020 WL 6393718 (S.D.N.Y. May 20, 2020).

contributed to the Court being able to rule on the Petition without a hearing.  This is indicative of efficient and diligent work, not excess.[10]  The Court finds that the hours spent by counsel for Petitioner were reasonable and do not warrant any reduction.

The Court therefore calculates the attorneys' fees owed to Petitioner by multiplying 82.8 hours of work by an hourly rate of $262.77, for a total of $21,757.36.  This is $1,507.78 less than Petitioner originally requested, but the reduction is warranted based on the correct CPI-U, as discussed above.

*      *      *

**CONCLUSION**

For the reasons set forth above, Petitioner's motion for EAJA fees is granted in part and denied in part, with a reduction of $1,507.78 from Petitioner's requested amount.  Petitioner is awarded $21,757.36 in attorneys' fees pursuant to the EAJA, 28 U.S.C. § 2412.  The case remains closed.

SO ORDERED.

_/s/ Pamela K. Chen_
Pamela K. Chen
United States District Judge

Dated: July 14, 2026
      Brooklyn, New York

---

[10] If anything, Petitioner's attorneys' hours undercount the work that his attorneys performed, as Petitioner did not include entries for drafting his reply brief for the present fees motion.  (*See* Fees Reply, Dkt. 24, at 9 (noting that Petitioner did not add hours to the fees request for time spent drafting the fees reply brief)); *see also Patel v. Almodovar*, No. 26-CV-1420 (DLC), 2026 WL 1649635, at *1 n.2 (S.D.N.Y. June 8, 2026) ("The Supreme Court has explained that an EAJA fee award may encompass the time spent to prepare 'a party's preparation of a fee application and its ensuing efforts to support that same application.'" (quoting *Jean*, 496 U.S. at 161–62)).

14